UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-20589-CIV-UNGARO

ROSARIO RUIZ,

    Plaintiff,

v.

ROYAL FLOWERS, INC.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment, filed on January 12, 2009. (D.E. 20). Plaintiff filed her Response in opposition on February 4, 2009. (D.E. 38). Defendant filed its Reply in further support of its Motion on February 17, 2009 (D.E. 41.) Accordingly, the Motion is now ripe for adjudication.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

By way of background, this case arises out of Plaintiff's employment with Defendant as assistant controller from April 2006 until she was terminated on October 10, 2006. (Defendant's Statement of Material Facts ("DSMF") ¶ 9.) According to Plaintiff, Defendant wrongfully terminated her because of her national origin (Cuban).[1] (Compl. ¶ 12.) The following are the pertinent facts for the purposes of Defendant's Motion for Summary Judgment.[2]

---

[1] Plaintiff's Complaint originally also included claims for retaliation (Counts II and IV) and negligent supervision (Count V). However, Plaintiff has voluntarily these claims (*see* D.E. 3 & 18), leaving only the claims based on discrimination (Counts I and III.)

[2] Defendant has submitted a statement of material facts in support of the instant Motion. To the extent that Plaintiff (the non-movant) controverts the facts alleged by Defendant with evidence, the Court will adopt the facts set forth by Plaintiff. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). To the extent that Plaintiff does not controvert the facts alleged by Defendant and those facts are supported by the record, the Court adopts the facts contained within Defendant's statement. *See* S.D. Fla. L.R. 7.5.D ("All material facts set forth in

Defendant is a cut flower distributor owned by the Verdezoto family, with siblings Edwin Verdezoto ("Mr. Verdezoto") and Heidi Verdezoto ("Ms. Verdezoto") employed as President and Director/Chief Financial Officer, respectively. (DSMF ¶¶ 1, 3-4.) The Verdezoto family also owns Royal Atlantic Developers, Inc.[3] ("Royal Atlantic"), which is a real estate development company, and Royal Flowers, S.A., which provides flowers from its farms in Ecuador for distribution through Defendant. (DSMF ¶ 1.) Defendant and Royal Atlantic are independent entities, although both operate out of the same location in Miami, Florida. (Decl. of Heidi Verdezoto ("H.V. Decl.") ¶ 2.)

Ms. Verdezoto has very high expectations for the controller position; as a result, this position has experienced significant turnover. (H.V. Decl. ¶ 6; DSMF ¶¶ 6, 7.) The controller is technically employed by Royal Atlantic but manages the day-to-day financial operations of both Defendant and Royal Atlantic. (H.V. Decl. ¶ 6; DSMF ¶ 10; Decl. of Eliuth Alvarez ("Alvarez Decl.") ¶ 2.) Between September 2005 and March 2006, Royal Atlantic employed two different controllers, both non-Cuban, each of whom was terminated after a few months for failing to meet expectations. (DSMF ¶ 7.) Beginning May 2, 2006, Eliuth Alvarez ("Ms. Alvarez") held the position of controller until she was terminated on October 4, 2006, which Ms. Verdezoto maintains was for poor performance. (H.V. Decl. ¶ 8.)

Defendant and Royal Atlantic each employ one assistant controller, important positions that support the controller's management of the day-to-day financial operations of the companies; as a result, Ms. Verdezoto also has very high expectations for the assistant controller positions. (DSMF ¶ 6; H.V. Decl. ¶¶ 9, 10.) The controller directly supervises the work of the assistant controllers. (DSMF ¶ 10; PSMF ¶ 10.) An important responsibility of Defendant's assistant

---

the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement . . . .").

[3] For Royal Atlantic, Mr. Verdezoto holds the position of Chief Executive Officer, while Ms. Verdezoto is the Chief Financial Officer and a director. (DSMF ¶¶ 3, 4.)

controller is to coordinate various accounting transactions between Defendant and its related companies in Ecuador, which includes supervision of the accounts receivable clerk for Royal Flowers, S.A. (DSMF ¶ 6.) The assistant controller position for Defendant has also experienced significant turnover. (H.V. Decl. ¶ 12; DSMF ¶ 6.) Following Plaintiff's termination, Defendant hired Henry Barrios ("Mr. Barrios"), who is of Venezuelan origin, to fill the position of assistant controller. (DSMF ¶ 9.) Mr. Barrios held the assistant controller position for five months before he was terminated for failure to meet Ms. Verdezoto's expectations. (DSMF ¶ 9.)

Mr. Verdezoto alone interviewed Plaintiff prior to hiring her. (Plaintiff's Rule 7.5 Response with Incorporated Statement of Material Facts ("PSMF") ¶ 11.) This interview was very short and consisted mostly of Mr. Verdezoto describing the Defendant corporation and complimenting Plaintiff's qualifications. (PSMF ¶ 11.) Upon conclusion of the interview, Mr. Verdezoto offered Plaintiff the job and asked her to start the next day. (PSMF ¶ 11.)

As the controller, Ms. Alvarez was Plaintiff's direct supervisor. (DSMF ¶ 13.) Plaintiff's job duties included: supervising the accounts receivable clerk in Ecuador, Monica Chamorro ("Ms. Chamorro"), as related to transactions between Defendant and its related companies in Ecuador; supervising the accounts receivable and accounts payable clerks in Miami; creating cash flow reports for the company to facilitate approval of checks; reconciling payments to the farms in Ecuador, including scheduling wire transfers and obtaining approval for wire transfers from Ms. Verdezoto; solving issues as needed for the accounts payable or accounts receivable clerks; reconciling Defendant's three bank accounts, including bringing the bank accounts up to date; assisting the controller with the controller's job duties; and reconciling the bank accounts for Defendant's related corporation, Exinvest Corporation. (DSMF ¶ 13.) Plaintiff and Ms. Alvarez maintain that because the assistant controller for Royal Atlantic–Joel Underwood ("Mr. Underwood")–was slow, Plaintiff undertook additional responsibilities. (PSMF ¶ 13.)

Royal Atlantic hired Mr. Underwood as its assistant controller in September 2005. (DSMF ¶ 15.) Although Plaintiff disputes that Mr. Underwood performed his job well based on

3

Ms. Alvarez's testimony that Mr. Underwood was often slow in completing tasks, Ms. Verdezoto states that she is satisfied with his job performance, as (1) he has been loyal, adaptable, and respectful, and (2) he has not been the subject of any complaints from employees in Ecuador. (DSMF ¶ 15; PSMF ¶ 15; Alvarez Decl. ¶¶ 5, 14.)

According to Ms. Verdezoto, Plaintiff's work performance was below average, as her work was sloppy and unprofessional. (DSMF ¶ 19.) Ms. Verdezoto cites a number of alleged instances in which she found Plaintiff's work performance to be lacking: (1) Plaintiff failed to create cash flow reports as directed by Ms. Verdezoto, instead providing notes with a calculator stub, even after Ms. Verdezoto had informed Plaintiff and Ms. Alvarez on numerous occasions that she felt that the calculator stub was unprofessional; (2) Plaintiff frequently missed deadlines for tasks assigned to her by Ms. Verdezoto, as a result of which Ms. Verdezoto issued Plaintiff a written warning; (3) Plaintiff ignored multiple instructions from Ms. Verdezoto to negotiate a better interest rate for a credit card; (4) Ms. Verdezoto specifically told Plaintiff that payroll information was confidential and that Plaintiff was prohibited from accessing complete payroll information, but Plaintiff accessed the complete payroll information on June 15, 2006; and (5) each month, Plaintiff failed to reconcile the month-end reports for which she was responsible and also failed to bring the monthly reports for Defendant and Exinvest up to date beginning with May 2005. (DSMF ¶¶ 14, 16-18.) Plaintiff disputes the veracity of all of these allegations in their entirety. (PSMF ¶¶ 14, 16-18.) Further, Plaintiff states that during her employment, she brought the accounting work that had been approximately one year behind up-to-date. (PSMF ¶ 36.)

Ms. Verdezoto states that she received numerous complaints about Plaintiff from personnel in Ecuador–including Ms. Chamorro and Jay Cornell ("Mr. Cornell")–regarding Plaintiff's job performance and her attitude. (DSMF ¶¶ 21-25.) Both Ms. Chamorro and Mr. Cornell testify that Plaintiff was frequently so unresponsive to their requests for information or for assistance in resolving problems that they had to seek assistance from Ms. Verdezoto on

many matters that Plaintiff should have been handling and that they frequently shared their concerns about Plaintiff's job performance with Ms. Verdezoto. (Decl. of Monica Chamorro ("Chamorro Decl.") ¶¶ 4, 5; Decl. of Jay Cornell ("Cornell Decl.") ¶ 5.) Ms. Chamorro further asserts that (1) Plaintiff's work was sloppy and slow, causing errors, confusion, and frequent delays in completing important, time-sensitive transactions; (2) Plaintiff had a terrible attitude, became easily angered when questioned about delays, and was generally very difficult and unpleasant to work with; and (3) that she shared these concerns with Ms. Verdezoto on numerous occasions. (Chamorro Decl. ¶¶ 4-6.) Ms. Verdezoto maintains that she orally counseled Plaintiff every time she received a complaint about her, but Plaintiff denies that she was ever made aware of any complaint about her job performance and that the only feedback she received about her performance was excellent. (DSMF ¶ 21; Decl. of Rosario Ruiz ("Ruiz Decl.") ¶¶ 14-17.) Plaintiff also disputes the veracity of the substance of the complaints made by Ms. Chamorro. (Ruiz Decl. ¶¶ 14, 15.) Further, Ms. Alvarez states that she was never advised of any complaints regarding Plaintiff and that she would have known about any complaints because she was Plaintiff's direct supervisor. (Alvarez Decl. ¶¶ 12, 13.)

Defendant has a 90-day probationary period for all new hires. (DSMF ¶ 27.) According to the Verdezotos, they did not terminate Plaintiff's employment during the probationary period because they were trying to give Plaintiff a chance to improve her performance. (DSMF ¶ 27.) Defendant also has a policy of progressive discipline in order to notify an employee of deficiencies in her performance and provide her with a chance to improve her performance. (PSMF ¶ 34.) This policy ordinarily begins with a verbal warning, which is followed by a written warning. (PSMF ¶ 34.) Ms. Verdezoto maintains that she gave Plaintiff multiple oral and written warnings regarding her job performance before terminating her. (DSMF ¶ 27.) Plaintiff denies that she ever received any warnings from Ms. Verdezoto. (PSMF ¶ 27.)

Mr. Verdezoto and Ms. Verdezoto claim that they discussed their concerns about their impression that Plaintiff was performing her job poorly and, in late August or early September

5

2006, made the decision to fire Plaintiff once a suitable replacement could be found.  (DSMF ¶ 26.)  Thereafter Ms. Verdezoto placed job advertisements online for Plaintiff's position.  (DSMF ¶ 26.)  Plaintiff and Ms. Alvarez dispute that her job performance was lacking in any way and state that Plaintiff did excellent work.  (PSMF ¶ 26.)

Plaintiff was absent from work on Thursday, October 5, 2006.  (DSMF ¶ 30; PSMF ¶ 30.)  Ms. Verdezoto claims that she met with Plaintiff on Friday, October 6, 2006, to discuss concerns about Plaintiff's job performance and that (1) Plaintiff was hostile and argumentative; (2) Plaintiff disagreed with everything Ms. Verdezoto said; and (3) Plaintiff threw a document on Ms. Verdezoto's desk.  (DSMF ¶ 30.)  Plaintiff denies that this meeting ever took place.  (PSMF ¶ 30.)

According to Ms. Verdezoto, immediately following her meeting with Plaintiff on October 6, 2006, she was worried about Plaintiff's attitude and about what Plaintiff might do with her access to Defendant's bank accounts and financial information.  (DSMF ¶ 31.)  Thus, Ms. Verdezoto says, she invalidated Plaintiff's access to Defendant's financial system.  (DSMF ¶ 31.)  Plaintiff denies that Ms. Verdezoto would have any reason to believe that Plaintiff would tamper with Defendant's bank accounts or financial information because no meeting between them ever took place on October 6, 2006.  (PSMF ¶ 31.)

The Verdezotos state that they met on October 6, 2006, following the meeting between Ms. Verdezoto and Plaintiff, and decided that Plaintiff should be terminated immediately becuase she was hostile, produced sloppy work, lacked professionalism, failed to meet deadlines, and failed to understand the corporate structure of the companies.  (DSMF ¶ 32.)  Plaintiff does not know whether such a meeting took place but denies the substance of the Verdezotos' complaints about her.  (PSMF ¶ 32.)  Ms. Verdezoto further claims that on October 7, 2006, she discovered an error that Plaintiff had made regarding an intercompany transfer of money.  (DSMF ¶ 33.)  Plaintiff denies that she made such an error.  (PSMF ¶ 33.)

Following Plaintiff's absence from work on October 9, 2006, the Verdezotos terminated

her employment on October 10, 2006.  (DSMF ¶ 34.)  Prior to October 10, 2006, Plaintiff felt that her termination was imminent, for Ms. Alvarez had informed her that Ms. Verdezoto was unhappy with her.  (DSMF ¶ 35.)  Plaintiff admits that she never heard any manager or supervisor, including Ms. Verdezoto, tell any ethnic jokes or make any disparaging remarks about Cubans.  (DSMF ¶ 38.)  Plaintiff also admits that she never heard any member of management suggest or imply that she was terminated because of her national origin.  (DSMF ¶ 38.)  Brenda Garcia, who was the human resources manager during Plaintiff's tenure working for Defendant, states that she never heard any derogatory comments or jokes concerning Cubans or any other ethnicity from anyone in management, including Ms. Verdezoto.  (DSMF ¶ 40.)

On March 6, 2008, Plaintiff filed her Complaint to begin this action.  (D.E. 1.)  In the Complaint, Plaintiff demands relief for Defendant's alleged discrimination on the basis of her national origin in violation of 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq*.  (*See generally* Compl.)  Defendant filed the instant Motion for Summary Judgment on January 12, 2009.  (D.E. 20.)

## **LEGAL STANDARD**

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient

showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[4] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## ANALYSIS

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

Title VII[5] prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of, among other qualities, national origin. 42 U.S.C. § 2000e-2(a)(1). In a disparate treatment case based on national origin, "the plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his [national origin]." *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004). In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence: direct evidence, circumstantial evidence, or statistical evidence. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Absent direct evidence or statistical evidence of discriminatory treatment, as here,[6] an employee may establish discriminatory intent through circumstantial evidence under the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cooper*, 390 F.3d at 723-24. Under this framework, an employee must first establish a *prima facie* case of discrimination by showing: (1) that he is a member of a protected class; (2) that he was subjected to adverse job action; (3) that he was replaced by or treated less favorably than someone similarly situated outside of his protected class; and (4) that he was qualified for the position held. *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006). The production of evidence sufficient to establish a *prima facie* case creates a

---

[5] FCRA is modeled after Title VII and Florida courts have held clearly that federal case law interpreting the rights and remedies created by Title VII may be applied to claims arising under FCRA. *Brand v. Florida Power Corp.*, 633 So.2d 504 (Fla. 1st DCA 1994); *Florida Dep't of Cmty. Affairs v. Bryant*, 586 So.2d 1205 (Fla. 1st DCA 1991). Plaintiff claims that the same operative facts give rise to his claims for discrimination under Title VII and FCRA, and the Court will analyze Plaintiff's claims under both statutes together using the framework established by the United States Supreme Court for cases arising under Title VII.

[6] Plaintiff has failed to present any direct evidence or statistical evidence of discrimination, and the undisputed facts demonstrate that Plaintiff never heard any of Defendant's managers or supervisors make any disparaging remarks or jokes about Cubans. (DSMF ¶ 38.) "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted).

presumption of discrimination. *Standard*, 161 F.3d at 1331. The employer must then rebut the presumption by offering a legitimate, non-discriminatory reason for the employment action. *Id*. However, the defendant's burden is merely one of production; it "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted). If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reason by producing evidence showing that it is pretextual. *Standard*, 161 F.3d at 1331 (citations omitted).

As an initial matter, the Court finds that Plaintiff has unquestionably established the first three elements of a *prima facie* Title VII discrimination case, for Plaintiff is a member of a protected class (Cuban descent), was subjected to an adverse job action (terminated), and was replaced by someone outside of his protected class (Henry Barrios, of Venezuelan descent)[7]. Defendant argues that Plaintiff has failed to establish the fourth *prima facie* element: that she was qualified for her job. (Def.'s Mot. 9-10.) According to Defendant, Plaintiff has not demonstrated that she was qualified for her job because "the evidence establishes that Ms. Verdezoto and other persons in Ecuador were dissatisfied with Plaintiff's work for many reasons." (Def.'s Mot. 9.) However, as Plaintiff points out, Eleventh Circuit case law holds that a plaintiff who has been discharged from a previously held position does not need to satisfy this *prima facie* prong and that allegations of the plaintiff's poor performance are properly considered in evaluating the pretextual nature of the employer's proffered nondiscriminatory reasons for termination. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th

---

[7] Defendant argues that Plaintiff has failed to demonstrate the existence of any comparators and that Henry Barrios does not qualify as a comparator because he was terminated after five months as well. (*See* Def.'s Mot. 10-11.) However, it appears that Defendant has misunderstood this third *prima facie* element, as Plaintiff need only show that she was replaced by someone outside of her protected class, not that her replacement was treated more favorably. *See Burke-Fowler*, 447 F.3d at 1323.

Cir. 1999) (citations omitted). Thus, the Court finds that Plaintiff has established a *prima facie* case of discrimination.[8]

Because the Court has found that Plaintiff has established a *prima facie* case of discrimination based on national origin, the burden now shifts to Defendant to provide a legitimate, non-discriminatory reason for termination Plaintiff. *Standard*, 161 F.3d at 1331. According to Defendant, Plaintiff was terminated because she failed to meet Ms. Verdezoto's very high expectations for the assistant controller position. (Def.'s Mot. 12.) Defendant maintains that Ms. Verdezoto found Plaintiff's work to be sloppy, unprofessional, and untimely and that Ms. Verdezoto was worried about Plaintiff's attitude and insubordinate behavior, considering that Plaintiff could damage the company using her access to the company's financial information and bank accounts. (Def.'s Mot. 12-13.) Defendant also avers that Ms. Verdezoto received numerous complaints from persons in Ecuador informing her that Plaintiff was unresponsive to requests for assistance, performed sloppy work, and was difficult to work with because of her attitude. (Def.'s Mot. 12.) The Court concludes that this explanation, if unrebutted, qualifies as a legitimate, non-discriminatory reason, and, as a result, the burden returns to Plaintiff to prove that this proffered reason is merely a pretext. *Standard*, 161 F.3d at 1331 (citations omitted).

In order to establish pretext, a plaintiff may show either that the defendant's proffered reason is unworthy of credence or that the defendant was more likely motivated by a discriminatory reason. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." *Id*. (citations omitted). The plaintiff must demonstrate weaknesses or

---

[8] In its Motion, Defendant states that "Plaintiff has no prima facie case because her allegations simply fail to raise any inference of discrimination," and discusses at length the lack of evidence of any discriminatory intent on its part. (Def.'s Mot. 6-9.) However, discriminatory intent does not play any part in the Court's inquiry into whether Plaintiff has proven a *prima facie* case. *See Burke-Fowler*, 447 F.3d at 1323.

implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) (citation omitted). As Plaintiff has failed to produce any evidence that would tend to show that Defendant's decision to terminate Plaintiff was motivated by a discriminatory reason, the Court will assume that Plaintiff seeks only to show that Defendant's proffered nondiscriminatory reason is unworthy of credence.

Plaintiff argues that Defendant's proffered reasons are pretextual because (1) Plaintiff and Ms. Alvarez have specifically controverted all of the allegations of poor performance that Ms. Verdezoto has leveled against Plaintiff; (2) Plaintiff and Ms. Alvarez have specifically controverted the claims made by Ms. Chamorro against Plaintiff; (3) Plaintiff was highly qualified for the position by experience and education; (4) Plaintiff was terminated after successfully completing Defendant's ninety day probationary period for all new employees; (5) Defendant had a policy of progressive discipline and Plaintiff was terminated without having been given any prior warnings; (6) Plaintiff brought the accounting books up to date during her tenure; and (7) Defendant's claim of fear of computer sabotage is not supported by any evidence.[9] (Pl.'s Resp. 12-17.)

The Court first notes that several issues of fact exist, namely: (1) whether Plaintiff improperly accessed payroll information after having been warned against such behavior by Ms. Verdezoto; (2) whether Plaintiff properly and timely prepared all cash flow reports; (3) whether Plaintiff met all her deadlines; (4) whether Plaintiff properly and timely prepared all end of

---

[9] Plaintiff also mentions that (1) Ms. Alvarez's testimony controverts the claims of work deficiencies; (2) she was never informed of any problems with her performance prior to her termination; and (3) Ms. Alvarez believes that Ms. Verdezoto discriminated against Plaintiff based on her supervision of and comparison of Plaintiff and Mr. Underwood. (Pl.'s Resp. 12-17.) The Court shall not separately address the first two arguments as they are duplicative of arguments made elsewhere and considered by the Court. As for the third argument, Ms. Alvarez's subjective belief that Ms. Verdezoto discriminated against Plaintiff on the basis that Mr. Underwood is an appropriate comparator is irrelevant here, because Henry Barrios is the comparator in the Plaintiff's *prima facie* case.

month reports; (5) whether Plaintiff caused any delays or missing wire transfers; (6) whether the substance of the complaints from the Ecuadorian workers is true; (7) whether Ms. Verdezoto informed Plaintiff of her concerns over Plaintiff's work performance prior to terminating Plaintiff; (8) whether Plaintiff received any written reprimands from Ms. Verdezoto; (9) whether Plaintiff and Ms. Verdezoto met to discuss Plaintiff's performance on October 6, 2006; and (10) whether Plaintiff was disrespectful to Ms. Verdezoto during the alleged October 6, 2006, meeting.  Crediting Plaintiff's testimony and that of Ms. Alvarez, as the Court must at this stage, the Court finds that Plaintiff has sufficiently demonstrated that a reasonable juror could find that Defendant's stated nondiscriminatory reasons for terminating Plaintiff were a pretext for discrimination.  According to Plaintiff's testimony, Plaintiff completed all work assigned to her without issue and was never informed of any complaints about her or deficiencies in her work, until she was suddenly terminated without warning.  Additionally, even focusing on the fact that (1) Ms. Verdezoto received complaints regarding Plaintiff from Ms. Chamorro and Mr. Cornell[10] and (2) the substance of Mr. Cornell's complaints was true,[11] a reasonable juror could find that Defendant's reasons were pretextual, given that, according to Plaintiff, Ms. Verdezoto acted in direct contravention of Defendant's progressive discipline policy, which requires oral and written warnings prior to termination, in terminating Plaintiff based on these complaints without once giving Plaintiff an oral or written warning.[12]  Given the aforementioned circumstances, the Court

---

[10] Although Plaintiff disputes the substance of these complaints, she has no personal knowledge as to whether the complaints were made and, thus, cannot dispute the existence of the complaints.  Likewise, Ms. Alvarez's testimony regarding whether these complaints were made cannot be credited for the same reason.  *See Scalone v. Home Depot U.S.A., Inc.*, 280 Fed. Appx. 905, 908 (11th Cir. 2008) (citation omitted) (stating that allegations in affidavits must be based on personal knowledge and not information and belief in order to create a genuine issue of material fact).

[11] Plaintiff does not rebut Jay Cornell's testimony in any way.

[12] Although Defendant has provided several "Personnel Notes" documenting Plaintiff's alleged deficiencies, there is no evidence that any of these Personnel Notes was ever provided to Plaintiff, as they are addressed to "Human Resources Dept." (*See* D.E. 24-3)

cannot now find that no reasonable juror could conclude that Defendant's stated nondiscriminatory reasons were pretextual. As such, at least one of the disputed issues of fact is material and summary judgment is inappropriate at this juncture. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (D.E. 20) is DENIED. It is further

ORDERED AND ADJUDGED that the parties SHALL return to mediation with either the original mediator or a different mediator selected by the parties and such mediation shall be concluded on or before April 17, 2009.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of March, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record